UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 08-CR-52

TED L. PAPPAS,

    Defendant.

---

ORDER ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION (Doc. # 34), GRANTING DEFENDANT'S MOTION TO SUPPRESS (Doc. # 25), AND SETTING FINAL PRETRIAL DATE

        Defendant, Ted Pappas, is charged by indictment with two counts of knowingly possessing, shipping, and transporting in interstate commerce matter containing visual depictions involving the use of minors engaging in sexually explicit conduct, contrary to 18 U.S.C. § 2252(a)(4)(B). He has filed a motion to suppress evidence obtained and connected with the execution of a search warrant issued November 27, 2006. Magistrate Judge Patricia Gorence issued a Recommendation October 21, 2008, that this court grant Pappas' motion to suppress. The government timely filed an objection to Judge Gorence's Recommendation.

        On dispositive matters and certain other matters enumerated in 28 U.S.C. § 636(b)(1)(A), including motions to suppress evidence, a magistrate judge may only propose findings and make recommendations. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). A district court must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3). However, portions of a recommendation to which no party objects are reviewed for

clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Thus, the de novo standard of review applies only to matters on which a party objects to a magistrate judge's recommendation (rather than an order) on the issues set forth in § 636(b)(1)(A) and Fed. R. Crim. P. 59(b)(1).

In this case, Pappas argues that the search warrant for his residence was issued improperly because the affidavit submitted by Immigration and Customs Enforcement Special Agent Elizabeth Hanson failed to establish probable cause. In her affidavit in support of the warrant, Special Agent Hanson explained that ICE agents in San Diego executed a search warrant in May 2005 at Michael Golubski's residence.[1] Analysis of Golubski's computers revealed that he had sent and received numerous emails with attachments containing child pornography using the email addresses "Exhibmale39@aol.com" and "bob4funscal@yahoo.com." Between April 5, 2005, and May 1, 2005, Golubski sent seventeen emails with image or movie attachments to "longtalks@aol.com." Special Agent Hanson noted that she viewed the seventeen emails: eleven included images or movie attachments depicting child pornography, five included adult pornography, and one included a girl of "questionable age." She described in the affidavit details of three of the illegal images sent to "longtalks@aol.com."

The affidavit went on to note that AOL records indicate that "longtalks@aol.com" is registered to Pappas, and that on June 28, 2008, Pappas deleted the "longtalks" address. After that date, his email address became "TedP5785@aol.com."

---

[1] It turns out that the emails sent by Golubski to "longtalks@aol.com" were discovered as a result of a search of Golubski's AOL account, not his residence. This issue was raised by the parties and discussed by Judge Gorence in her Recommendation. However, it is not relevant to the government's objections.

- 2 -

Case 2:08-cr-00052-CNC   Filed 12/16/08   Page 2 of 11   Document 41

Special Agent Hanson further averred that Pappas was arrested twice in 1980. He was arrested for disorderly conduct, a charge that was eventually dismissed. He was also arrested and convicted on a burglary charge for which he was sentenced to twelve years probation. The affidavit then listed Pappas' daytime and evening telephone numbers, his driver's license number, date of birth, confirmation of his residential address in Wauwatosa, and evidence of his employment.

Special Agent Hanson also included in the affidavit information on profiles of persons who collect child pornography. Based on her training and experience, she addressed the typical behavior and mind-set of pedophiles, noting that individuals who collect images of child pornography "rarely, if ever, dispose of or alter such materials." The affidavit states that the "dramatically increased storage capacity of home computers" permits retention of image files for long periods of time, often up to three years, and that "individuals who collect, procure, and/or distribute images of minors engaged in sexually explicit conduct via the computer" often maintain names of websites and email addresses of persons with similar interests. It goes on to note the process for evidence collection in such investigations. Finally, it states the place to be searched and items to be seized.

On November 27, 2006, based on the information provided by Special Agent Hanson, Magistrate Judge William E. Callahan authorized the search of Pappas' home. The warrant was executed the next day, November 28, 2006. Pappas moves to suppress all evidence obtained during, or in connection with, the execution of that search warrant.

In his motion, Pappas argues that the affidavit merely claims that unsolicited emails were sent to "longtalks@aol.com," and that there is no indication that he solicited, received, opened, or possessed images of child pornography. In considering Pappas'

- 3 -

motion to suppress, Judge Gorence concluded that, under the totality of circumstances, probable cause was lacking. She noted that there was no evidence that Pappas ever communicated with Golubski prior to or after the receipt of the emails, no evidence that Pappas solicited the emails sent by Golubski, and that the affidavit failed to provide any information that Pappas is a child pornography collector. Analyzing these facts in light of the Seventh Circuit's recent decision in *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008), Judge Gorence held that without more, the evidence was insufficient and stale.

Judge Gorence further concluded that the "good faith exception" recognized in *United States v. Leon*, 468 U.S. 897 (1984), did not validate the search. In its objections to the Recommendation, the government concedes that probable cause for issuance of the warrant may have been lacking, but asserts that Judge Gorence erred in her application of *Leon's* "good faith exception" to the facts of this case.

A search pursuant to a warrant found wanting for probable cause can nonetheless be upheld if the officers reasonably relied on the magistrate judge's probable cause determination. *See Leon*, 468 U.S. at 923; *see also Jones v. Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005) ("Even if a warrant is ultimately found to be unsupported by probable cause or lacking in particularity, searches conducted pursuant to the warrant may be valid under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 926 (1984)."). "For a warrant search to qualify for the good-faith exception, however, the officers conducting the search must have manifested an objective good-faith belief in the validity of the warrant." *Jones*, 425 F.3d at 464.

- 4 -

"'An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith.'" *Prideaux-Wentz*, 543 F.3d at 959 (quoting *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005)). "A defendant may rebut this prima facie case by presenting evidence establishing either that: (1) the warrant issuing officer 'wholly abandoned his judicial role' and failed to 'perform his neutral and detached function,' serving 'merely as a rubber stamp for the police'; or (2) the affidavit submitted in support of the warrant was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Olson*, 408 F.3d at 372 (quoting *Leon*, 468 U.S. at 923); *see also United States v. Woolsey*, 535 F.3d 540, 546 (7th Cir. 2008) (discussing *Leon*). As to the latter, a court's inquiry is "whether the officer could have reasonably believed that the materials presented to the magistrate judge (either in an affidavit or in some other respect such as testimony from the police officers) were sufficient to establish probable cause." *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002).

Here, Judge Gorence concluded that the good faith exception did not apply because the search warrant affidavit "was so lacking in probable cause as to render official belief in its existence entirely unreasonable." (Rec. 15.) Judge Gorence focused on the affidavit's implied conclusion that Pappas fit the profile of an individual who collects child pornography. She noted that the affidavit contained mere boilerplate language regarding "collector profiles" without any connection to Pappas or the circumstances of the case. As stated in the Recommendation, "the affiant, as an experienced agent, should reasonably have concluded that the defendant did not meet the collector's profile and, therefore, that the affidavit in support of the warrant did not establish probable cause." (*Id.*)

- 5 -

This court has reviewed the Recommendation, the government's objections, and the relevant materials, and agrees with Judge Gorence's conclusion. First, there is not a whit of evidence in the affidavit indicating that Pappas fit a collector profile despite the boilerplate recitations included in the affidavit. *See United States v. Weber*, 923 F.3d 1338, 1345 (9th Cir. 1990). Unlike *Prideaux-Wentz*, there is no evidence that Pappas uploaded illegal images, participated in internet forums, or in any way controlled the illegal images at issue. Thus, a reasonable agent should have concluded the affidavit lacks the necessary bridge connecting boilerplate averments about collectors of child pornography to Pappas. *Cf. Prideaux-Wentz*, 543 F.3d at 961 ("Because the warrant connected Prideaux-Wentz to several email accounts responsible for uploading or possessing child pornography, we cannot say that it required too much of an inferential leap to conclude that Prideaux-Wentz might be a collector of child pornography. There was a bridge connecting the general averments contained in Agent Paulson's affidavit to Prideaux-Wentz: jackinpulpit2001. The user name "jackinpulpit2001" was tied to Prideaux-Wentz and this ID was responsible for uploading a fair number of child pornography images.").

Because the affidavit fails on its face to connect Pappas to the child pornography collector profile, any reliance on collectors' tendency to retain possession of illegal images for long periods of time is inappropriate. In other words, it does not follow that simply injecting boilerplate collector profile language into an affidavit so otherwise lacking in probable cause necessarily permits obvious staleness concerns to be ignored given similar time intervals was permitted in other "child porn" cases. Frankly, eliminating the inappropriate "collector profile" language from the affidavit leaves nothing indicating that evidence of receipt or possession of child pornography would likely exist at Pappas'

residence.[2] Thus, the government's contention that the evidence should be suppressed because the "search warrant was sought against the backdrop of Seventh Circuit caselaw emphasizing the absence of any 'bright line' rule for determining staleness in child porn cases" is unpersuasive. *Cf. United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) (discussing staleness in child pornography cases but noting that "the police did not base the search warrant on the year-old pornographic images alone; they also relied on Edwards's recent discovery of the tape of her daughter").

Relatedly, the government submits that *Prideaux-Wentz* cannot be applied to this case because it was issued after the warrant was sought and changed the standard for reliance on "collector profile" language in warrant affidavits. However, the court fails to see how *Prideaux-Wentz's* discussion of the applicable standard constitutes a retroactive application of a new "standard." First, among other cases, *Prideaux-Wentz* cites to *United States v. Weber*, 923 F.2d 1338, a 1990 case issued by the Ninth Circuit. Nothing suggests that *Weber* is an any way inconsistent with previous Seventh Circuit cases on

---

[2] The government asserts that Special Agent Hanson's affidavit mentions the "dramatically increased storage capacity" of modern personal computers, thus supporting the "fair probability" that illegal images would be located at Pappas' residence. However, the affidavit language is specifically couched in the collector profile section to illustrate the means by which collectors hold onto child pornography because such images are "treated as prized possessions." (Aff. ¶ 24(C).) As the government acknowledges, the affidavit lacks averments that the technology itself automatically retains the email images such that an eighteen month gap is no hurdle to the recovery of sought evidence. In any event, in the absence of affirmative actions by Pappas, such a contention would not necessarily create the "fair probability" (or reasonable belief therein) required to justify a search of Pappas' residence under the Fourth Amendment. *Cf. United States v. Gourde*, 440 F.3d 1065, 1067-69 (9th Cir. 2006) (discussing longevity of downloaded images on computer hard drives as supporting the "fair probability" that illegal images would be recoverable from the computer of a defendant who "took steps to affirmatively join" (via paid subscription to) a child pornography website featuring downloadable files).

- 7 -

point, and nevertheless, the applicable standard discussed in both cases stands on innate Forth Amendment principles. "In order to rely on profiles, 'the affidavit must lay a foundation which shows that the person subject to the search is a member of the class.'" 543 F.3d at 960 (quoting *Weber*, 923 F.3d at 1345). "Furthermore, 'rambling boilerplate recitations designed to meet all law enforcement needs' do not produce probable cause.'" *Id.* (quoting *United States v. Zimmerman*, 277 F.3d 426, 433 n.4 (3d Cir. 2002)). The government's argument on this point rests on the untenable assumption that at the time the affidavit was drafted, the simple recitation of boilerplate collector profile information without any evidence that the defendant fit such a profile gave rise to probable cause.

Finally, the government maintains that suppression of evidence in this case would be inconsistent with the purposes of the exclusionary rule. It points to *Leon*, which notes that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 U.S. at 918. The general purpose of the exclusionary rule is to "alter the behavior of individual law enforcement officers or the policies of their departments." *United States v. Harju*, 466 F.3d 602, 606 (7th Cir. 2006) (quoting *Leon*, 468 U.S. at 918); *see United States v. Peltier*, 422 U.S. 531, 539 (1975) ("The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right."); *Zimmerman*, 277 F.3d at 436 ("Because the 'purpose of the exclusionary rule is to deter unlawful police conduct,' the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable,

- 8 -

well-trained officer would have known that the search violated the Fourth Amendment." (quoting *Leon*, 468 U.S. at 919)). However, this argument can be circular inasmuch as *Leon* sets forth the exception applicable under the circumstances. The inquiry is objective and assumes a reasonable officer's knowledge of what the law prohibits. *See Leon*, 468 F.3d at 919 n.20. To that end, suppression is appropriate if the affidavit in support of the warrant so lacks indicia of probable cause that reliance upon it is entirely unreasonable. While the conclusion is not clear cut, the objectively apparent absence of probable cause presented in Special Agent Hanson's affidavit here warrants suppression under *Leon*.

As it appears, little in the affidavit distinguishes Pappas from any other citizen who received unsolicited email. The only fact connecting Pappas to child pornography in the warrant affidavit was that a third party emailed illegal images eighteen months earlier to an account once registered to Pappas but since deleted. Other information presented in the warrant—that Pappas maintains a different email account through AOL, one of the largest email service providers in the country; that Pappas was arrested over twenty years ago for burglary; that Pappas is employed, possesses a drivers license, and lives in Wauwatosa—is insignificant in the absence of any affirmative steps taken by Pappas to access child pornography.[3] Further, given the significant temporal gap between Golubski's actions and the date Special Agent Hanson sought the warrant, and no intermittent activity

---

[3] Indeed, it is the lack of information in the affidavit that distinguishes this case from others in which probable cause was either found to exist or the good-faith exception saved the search. For example, the affidavit lacks any allegation that Pappas solicited or expected to receive any communication (let alone child pornography) from Golubski or any other source, that Pappas had any prior contact with Golubski, that Pappas acknowledged receipt of Golubski's emails, that Pappas opened the emails, or that Pappas frequented any internet forums. Further, there is no allegation that some other source—a cyber tip, a complaint, a witness, a criminal record—ties Pappas to child pornography.

- 9 -

Case 2:08-cr-00052-CNC   Filed 12/16/08   Page 9 of 11   Document 41

bolstering probable cause or refreshing the underlying information, a reasonable agent would know the (scant) information presented in support of a search warrant was wholly insufficient and stale. *Cf. Prideaux-Wentz*, 543 F.3d at 961; *see generally United States v. Spry*, 190 F.3d 829, 836 (7th Cir. 1999) (discussing staleness); *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir. 1992) (same). The good faith exception could not have been designed to save searches stemming from a warrant affidavit so objectively lacking in probable cause. *Cf., e.g., United States v. Curry*, 538 F.3d 718, 730 (7th Cir. 2008) ("The officers here would have had no reason to question the warrants because, as we have described, the affidavit referred to significant circumstantial evidence that indicated that Mr. Curry may have been the perpetrator of the robberies under investigation, and that the fruits and instrumentalities of that robbery may be located in his home or in his storage locker."); *Woolsey*, 535 F.3d at 548 ("Nor can we say that the affidavit is so plainly deficient that Babcock should have known that it would not amount to probable cause. Again, the document conveys considerable detail, including the extent to which Chastain and Babcock had corroborated Tuell's statements, the firsthand observations of Tuell, and the amount of time that had passed since Tuell saw the drugs."); *United States v. Sidwell*, 440 F.3d 865, 870 (7th Cir. 2006) ("[T]he controlled buy, the informant's description of Mr. Sidwell's apartment unit and the drug paraphernalia in the hallway outside of Mr. Sidwell's apartment provided Officer Hasse with, at a minimum, indicia of illegal drug dealing in that apartment. The officers' reliance on the warrant was therefore in good faith."). For the foregoing reasons,

IT IS ORDERED that the Magistrate Judge's Recommendation (Doc. # 34) is adopted.

IT IS FURTHER ORDERED that the defendant's motion to suppress evidence (Doc. # 25) is granted.

IT IS FURTHER ORDERED that the parties are to appear for a final pretrial conference on January 26, 2009, at 2:00 p.m. and for jury trial on February 2, 2009, at 8:30 a.m. in Courtroom 222, United States Courthouse, Milwaukee, Wisconsin.

Dated at Milwaukee, Wisconsin, this 16th day of December, 2008.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE